UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Not for Publication**

APRIL HANKINS, et al,

   *Plaintiffs*,

v.

PHILADELPHIA CONTRIBUTIONSHIP
INSURANCE COMPANY, et al ,

   *Defendants*.

Civil Action No. 15-203

**OPINION**

**John Michael Vazquez, U.S.D.J.**

  This case stems from a tragic accident that resulted in the death of Vernon Hankins ("Mr. Hankins") when the "root ball" of a large tree fell on him. Pending before the Court are motions for summary judgment by Defendant Philadelphia Contributionship Insurance Company ("PCIC") as well as Defendant Crawford & Company's ("C&C") and Defendant James Kincaid's ("Mr. Kincaid") (collectively "Defendants"). D.E. 61, 63. Plaintiff April Hankins ("Ms. Hankins"), individually and in her role as executrix of the estate of Vernon Hankins ("Plaintiffs") filed a brief in opposition, D.E. 76, to which Defendants replied. D.E. 80, 82.[1] The Court reviewed the submissions made in support and in opposition of the motion and considered

---

[1] In this Opinion, Defendant PCIC's motion for summary judgment (D.E. 61) will be referred to as "PCIC MSJ." Defendant C&C and Mr. Kincaid's motion for summary judgment (D.E. 63) will be referred to as "C&C MSJ." Plaintiff's brief in opposition (D.E. 76) will be referred to as "Pl. Opp." Defendant PCIC's reply brief (D.E. 80) will be referred to as "PCIC Rep." Defendant C&C and Mr. Kincaid's reply brief (D.E. 82) will be referred to as "C&C Rep."

the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motions for summary judgment are **GRANTED**. As a result, both Defendants' and Plaintiffs' pending motions concerning expert testimony are **DIMISSED** as moot. D.E. 60, 62, 65, 66.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual Background

Plaintiff April Hankins and the deceased Vernon Hankins owned the property at 1 Nejecho Drive, Brick Township, New Jersey (the "Nejecho property"). C&C MSJ, C&C Statement of Material Facts Not in Dispute ("C&C SOMF") ¶ 1; D.E. 63-1.[2] April Hankins also owned the adjoining property at 302 Mantoloking Road (the "Mantoloking property"). *Id.* ¶ 2. Defendant PCIC insured both properties. *Id.* ¶ 4.

On October 29, 2012, Superstorm Sandy hit both properties. The impact of this storm led to a massive tree on the Mantoloking property falling down. *Id.* ¶ 3. As Ms. Hankins recalls, the displaced root ball of the fallen tree left a hole that touched both the Mantoloking and Nejecho properties. *Id.*; Plaintiffs Response to Proposed Statement of Facts ("PRPSF") ¶ 3; D.E. 76-3. Afterwards, Ms. Hankins reported the property damage to PCIC. PRPSF ¶ 7.

PCIC had a claim service agreement with C&C, pursuant to which C&C provided PCIC with claim services, including catastrophe claims service. C&C SOMF ¶ 5. C&C engaged Mr. Kincaid as a Catastrophe Field Claim Representative during the aftermath of Superstorm Sandy and assigned him to the Hankins' insurance claims. *Id.* ¶ 6.

---

[2] The Opinion cites to C&C's Statement of Material Facts Not in Dispute unless the parties disagree about the fact(s) or supplemental information is necessary.

2

Mr. Kincaid visited the Mantoloking and Nejecho properties on November 2, 2012. *Id.* ¶ 7. At that time, some of the branches had been removed from the fallen tree but many remained. *Id.* ¶ 8. Importantly, Mr. Kincaid observed that the root ball of the fallen tree remained attached to the trunk. *Id.* Mr. Kincaid testified that the root ball was approximately twelve to fifteen wide. C&C MSJ, Ex. D, J. Clay Kincaid ("Kincaid Dep.") 101:14-15; D.E. 63-7. Additionally, Mr. Kincaid testified that next to the exposed root ball there was a hole, where the root ball had been underground, approximately a foot to a foot and half deep. *Id.* at 101:21.

That hole, left from when the tree fell, posed a potential risk to the Mantoloking property's foundation. C&C MSJ; Ex. A, April Hankins Deposition ("Hankins Dep.") 98:20-21; D.E 63-4. Ms. Hankins testified that Mr. Kincaid informed Mr. Hankins that the hole could cause a weakening in the foundation of the Mantoloking property. *Id.* at 99:2-16. Mr. Kincaid also discussed with Mr. Hankins how much it might cost "to replace the soil at the void near the footing of the Mantoloking foundation." C&C MSJ; Ex. H, J. Clay Kincaid Affidavit ("Kincaid Aff."); D.E. 63-11.

The advice that Mr. Kincaid allegedly gave Mr. Hankins concerning the backfilling of that hole, to ensure the stability of the Mantoloking property foundation, forms the center of the current suit. While the parties agree that Mr. Kincaid told Mr. Hankins that the hole needed to be backfilled, they dispute whether Mr. Kincaid meant for Mr. and Ms. Hankins to perform the backfilling themselves, as opposed to hiring a professional. Defendants allege that Mr. Kincaid's statements concerning the refilling of the hole did not, and were not intended to, suggest that either Ms. or Mr. Hankins were to do the work themselves. C&C SOMF ¶¶ 22-24. Plaintiffs, however, assert that Mr. Kincaid's statements suggested that Mr. and Ms. Hankins were to actually do the work. PRPSF ¶¶ 22-23. For purposes of the motion, the Court assumes that Mr.

3

and Ms. Hankins understood Mr. Kincaid's statement to mean that they were to do it themselves. Further, the parties disagree over whether Mr. Hankins told Mr. Kincaid that he intended to hire a tree professional to remove the fallen tree. C&C SOMF ¶ 10; PRSPF ¶ 10. Mr. Kincaid indicates that Mr. Hankins stated that he would hire a professional. While disputed, Plaintiffs do not offer any evidence to rebut Mr. Kincaid's recollection.[3]

The November 2nd visit was the only time Mr. Kincaid went to the Mantoloking and Nejecho properties. Following that visit, Mr. Kincaid prepared appraisal reports for both properties. Pl. Opp., Ex. I & J; D.E. 76-14,15. Both reports are dated November 12, 2012. *Id.* The report concerning the Mantoloking property states, in relevant part, "[b]ackfill where root ball left void at left rear foundation" and "[b]ackfill by hand." Pl. Opp., Ex. I at pg. ID 2202.

The parties dispute whether Mr. Hankins received this report prior to his death on November 22, 2015. Defendant asserts that a check and copy of Mr. Kincaid's appraisal report were sent to Ms. Hankins on December 8, 2012. C&C MSJ, Ex. C, Affidavit of Beverly Trice ¶ 5; D.E. 63-6. Plaintiffs, in contrast, claim that the C&C "Notes of List Claim" document regarding the Mantoloking property indicates that Mr. and Ms. Hankins received the appraisal report on November 12, 2015. Pl. Opp., Ex. S; D.E. 76-24.

The report provides two notes dated November 12, 2013. The first note says "First Report." The second note says "Estimate Returned." *Id.* The dispute centers on the meaning of "Estimate Returned." As noted, Plaintiffs argue that it shows that the estimate was returned to

---

[3] Defendant's position is that "Vernon Hankins advised Kincaid that he intended to a hire a professional tree removal service to remove the fallen tree." C&C SOMF ¶ 10. Plaintiffs dispute this fact only so far as pointing out that Mr. Kincaid did not testify to this fact until after his deposition was taken. PRSPF ¶ 10. Thus, Plaintiffs do not offer their own facts to create a material issue of fact here. Regardless, there is no dispute that Mr. Hankins, soon after, told his neighbor that he (Hankins) was going to hire a professional tree removal service.

4

Mr. Hankins on that date. Defendants, on the other hand, claim that Mr. Kincaid prepared the estimate for PCIC, not Mr. Hankins. C&C SOMF ¶ 12. Plaintiffs have not produced any witness or evidence reflecting that the document should be interpreted as they suggest. In addition, Ms. Hankins did not testify that she received the appraisal report before her husband's passing. It is not clear to the Court, based on the face of the appraisal report, that the document refers to Mr. and Mrs. Hankins receiving the report on or around November 12, 2013.

Notwithstanding this disagreement, the parties agree that following Mr. Kincaid's visit, Mr. Hankins told his neighbor, David Cottrell ("Mr. Cottrell"), that he (Hankins) needed to hire someone to cut up the fallen tree up. C&C SOMF ¶ 35. Mr. Cottrell offered to do the job, and Mr. Hankins accepted. *Id.* ¶ 36. Subsequently, Mr. Cottrell and another neighbor, Keith Arasz ("Mr. Arasz"), cut up the tree. *Id.* ¶ 37. Mr. Arasz worked for the North Jersey Transportation Planning Authority and had removed trees as part of that job. *Id.* ¶ 38. He had also removed trees on his own property. *Id.* Further, Mr. Arasz testified that he had worked on trees of a similar size twenty to thirty times prior to working on the fallen tree in question.

Mr. Cottrell and Mr. Arasz cut up the tree, including the trunk, and then removed the debris. C&C SOMF ¶ 37. Thus, the men removed the entire tree excepting the root ball. After they removed the trunk, Mr. Cottrell and Mr. Arasz tried, to no avail, to push the root ball back into the hole. Mr. Arasz testified that he "suggested getting a chain and using a pickup truck to try and pull [the root ball] over." However, no one had a chain readily available. C&C MSJ., Ex. N., Deposition of Keith Arasz 22:7-15; D.E. 63-17. Afterwards, Mr. Arasz said he told Mr. Hankins that the root ball "could upright" and that he "should get it into the ground." *Id.* at 23:21-23. Mr. Arasz testified that while the root ball was attached to the trunk the root ball did not pose a danger because the trunk acted as a counterweight. C&C SOMF ¶ 40.

5

On the morning of November, 22, 2012, Thanksgiving, Mr. Hankins went to the Mantoloking and Nejecho properties. *Id.* ¶ 44. Thereafter, Ms. Hankins also went to the properties. Upon her arrival she saw Mr. Hankins in the hole left by the root ball. As she walked towards Mr. Hankins, the root ball fell back into the hole, killing Mr. Hankins. Pl. Opp. at 10. It is unknown why Mr. Hankins was in the hole that morning, although Ms. Hankins assumes he was attempting to backfill the hole.

### B. Procedural Background

On October 23, 2014, Plaintiffs filed a Complaint in the Superior Court of Ocean County, New Jersey. On November 10, 2014 Plaintiffs filed an Amended Complaint ("FAC') in state court. In the FAC, Plaintiffs allege six counts seeking to hold Defendants jointly and severally liable for negligence and Vernon Hankins' suffering from that negligence, including wrongful death pursuant to N.J.S.A. 15-3 (Count One), wrongful death recovery for the Estate of Vernon Hankins pursuant to N.J.S.A. 2A:31-1 (Count Three), suffering and wrongful death on behalf of both April Hankins and the Estate of Vernon Hankins (Count Four), April Hankins' emotional trauma (Count Five), and Defendants' intentional and willful misconduct (Count Six).[4] D.E. 1. Defendant C&C on January 9, 2015, removed the case to federal court. D.E. 1. On February 29, 2016 the case was reassigned from Judge Wigenton to the undersigned. D.E. 37. Then, on May 1, 2017, both PCIC and C&C with Mr. Kincaid moved for summary judgment. D.E. 61, 63. Plaintiffs filed a brief in opposition to these motions, D.E. 76, to which all Defendants replied. D.E. 80, 82.

---

[4] The FAC's Second Count seeks the Court's leave to amend the Complaint if, and when, Plaintiffs learn the identities of parties who also share legal responsibility for Vernon Hankins' death. D.E. 1.

## II. SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not

significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. ANALYSIS

All Defendants argue that they are entitled to summary judgment because they did not owe Mr. Hankins a duty of care and because Plaintiffs' claims fail to establish proximate cause as a matter of law. Defendant PCIC also argues that it bears no legal responsibility for the actions of Mr. Kincaid or C&C. PCIC MSJ at 2. C&C and Mr. Kincaid also note that, as a factual matter, Plaintiffs have failed to establish that Mr. Hankins was actually attempting to backfill the hole on November 22, 2015 because there is no competent evidence demonstrating why Mr. Hankins was in the hole when the accident occurred. C&C MSJ at 17, 33, 39, 44. Defendants also note that backfilling a hole is usually done from outside of the hole rather than in it. *Id.* at 44. Additionally, as to a duty of care, C&C and Mr. Kincaid argue that Mr. Kincaid, as an insurance adjuster, did not owe a duty of care to Ms. or Mr. Hankins as first party insureds. *Id.* at 21. Although Defendants admit that New Jersey has never addressed the issue, they point to decisions from several other jurisdictions to support their position. *Id.* at 22. For example, Defendants to point to a Vermont Supreme Court case where the court found that "public policy considerations do not favor creating a separate duty on the part of independent adjusters that would subject them to common-law tort actions by insureds." *Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶ 14 (2005). Defendants interpret their cited cases as suggesting that an

independent insurance adjuster owes a duty of care to the insurer rather than the first party insured. C&C MSJ at 22.

Plaintiffs disagree, claiming that the duty of care exists under New Jersey law pursuant to the Second Restatement of Torts section 323, "Negligent Performance of Undertaking to Render Services." Plaintiffs further assert that Defendants' remaining arguments are misplaced.

Because the Court finds that the proximate cause argument is dispositive, it does not reach the remaining arguments.

### A. Proximate Cause

The parties agree that New Jersey substantive law applies. Seeing no clear reason to deviate from the parties' assumptions, the Court will apply New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case.") (citing *USA Mach. Corp. v. CSC*, Ltd., 184 F.3d 257, 263 (3d Cir. 1999)). In New Jersey, a plaintiff asserting negligence must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Central Power & Light Co. v. Melcar Utility Co.*, 212 N.J. 576, 594 (2013) (citations omitted).

Proximate cause is "any cause which in the natural and continuous sequence, *unbroken by an efficient intervening cause*, produces the result complained of and without which the result would not have occurred." *Townsend v. Pierre*, 221 N.J. 36 (2015) (emphasis added) (quoting *Conklin v. Hannoch Weisman*, 145 N.J. 395, 418 (1996)) (citations omitted). "Foreseeability is a constituent part of proximate cause." *Komlodi v. Picciano*, 217 N.J. 387, 417 (2014). "An act is foreseeable when a reasonably prudent, similarly situated person would anticipate a risk that her

conduct would cause injury or harm to another person." *Id.* at 417-18 (citation omitted). However, "if an injury or harm was so remote that it could not have been reasonably anticipated, the injury or harm is not foreseeable." *Id.* at 418 (citation omitted).

Under New Jersey law, "the doctrine of superseding cause focuses on whether events or conduct that intervene subsequent to the defendant's negligence are sufficiently unrelated to or unanticipated by that negligence to warrant termination of the defendant's responsibility." *Lynch v. Scheininger*, 162 N.J. 209, 230 (2000). The *Lynch* court found that the Second Restatement's definition of a superseding event is "simple and straightforward":

> A superseding cause relieves the actor from liability, irrespective of whether his antecedent negligence was or was not a substantial factor in bringing about the harm. Therefore, if in looking back from the harm and tracing the sequence of events by which it was produced, it is found that a superseding cause has operated, there is no need of determining whether the actor's antecedent conduct was or was not a substantial factor in bringing about the harm.

*Id.* at 226 (quoting Restatement (Second) of Torts § 440 comment b (Am. Law Inst. 1965)). Thus, "[p]roximate cause has been described as a standard for limiting liability for the consequences of an act based upon mixed considerations of logic, common sense, justice, policy and precedent." *Fluehr v. City of Cape May*, 159 N.J. 532, 543 (1999) (internal quotations and citations omitted).

Typically, "[p]roximate cause is a factual issue, to be resolved by the jury after appropriate instruction by the trial court." *Scafidi v. Seiler*, 119 N.J. 93, 101 (1990). However, the issue of proximate cause can be decided as a matter of law if "reasonable minds could not differ on whether that issue has been established." *Fluehr*, 159 N.J. at 543 (citing *Vega by Muniz v. Piedilato,* 154 N.J. 496, 509 (1998)). In fact, "New Jersey courts have on many occasions held that proximate causation did not exist as a matter of law." *Port Auth. of New York & New*

*Jersey v. Arcadian Corp.*, 189 F.3d 305, 318 (3d Cir. 1999) (citing *Griesenbeck by Kuttner v. Walker*, 199 N.J. Super. 132, 140 (App. Div. 1985); *Jensen v. Schooley's Mountain Inn, Inc.*, 216 N.J. Super. 79, 522 (App. Div. 1987); *Brown v. U.S. Stove Co.*, 98 N.J. 155, 174 (1984); *Caputzal v. Lindsay Co.*, 48 N.J. 69, 78-79 (1966)).

At its core, Plaintiffs' theory is that Mr. Kincaid negligently advised Mr. Hankins that he needed to fill in the hole left at the base of the root ball, without warning Mr. Hankins of the risks of doing so. As a result of this negligent advice, according to Plaintiffs, the root ball fell on Mr. Hankins. At the outset, and for some unknown reason, Plaintiffs completely fail to address the intervening actions and advice of the neighbors, Mr. Cottrell and Mr. Arasz, in cutting the tree down to the root ball and then in warning Mr. Hankins of the dangers the root ball posed. Before addressing these undisputed facts, which the Court finds are superseding events terminating proximate cause as a matter of law, the Court will first address Plaintiffs' other arguments.

Plaintiffs argue several points. First, Plaintiffs argue that Mr. Kincaid failed to warn Mr. or Ms. Hankins of a "known" danger. Pl. Opp. at 19-20, 25. However, at the time Mr. Kincaid inspected the Mantoloking and Nejecho properties the root ball was attached to the trunk and the rest of the fallen tree. Further, there is no evidence that Mr. Kincaid knew (or that it was reasonably foreseeable to Mr. Kincaid) that the root ball would be separated from the trunk and that, thereafter, Mr. Hankins would then get into the hole.

Second, Plaintiffs claim that Mr. Kincaid knew that trees could sometimes upright themselves. *Id.* at 19-20, 25-26. Mr. Kincaid did testify to this fact. However, Mr. Kincaid said he did not have any prior experience with a tree uprighting itself or knowledge of any insurance claim where that happened. Rather, his awareness of this possibility came from a general sense

of counterbalance. Pl. Opp., Ex. F 135:6-9; D.E. 76-11. Yet, notwithstanding these facts, here, the tree did not upright itself. Instead, the root ball uprighted itself after Mr. Cottrell and Mr. Arasz cut the trunk away from the root mass.

Third, Plaintiffs assert that Mr. Kincaid knew that additional branches would be taken from the tree, i.e. that the tree would be "cut back" further. *Id.* at 20, 26. To begin, there is a considerable difference between removing additional branches from a tree and removing the actual trunk of the tree from the root ball. More importantly, Plaintiffs have presented no competent evidence to refute Mr. Kincaid's statement that Mr. Hankins informed him (Kincaid) that he would hire a professional to remove the tree. Even if the fact was in dispute, it is clear that Mr. Hankins also informed Mr. Cottrell that he was looking to hire someone to remove the tree. Thus, the Court does not find this argument to be persuasive.

Beyond these arguments, and for reasons the Court cannot understand, Plaintiffs do not address the actions and warnings of the neighbors, Mr. Cottrell and Mr. Arasz. *See* Pl. Opp. at 35-39. Moreover, the facts vis-à-vis the neighbors are undisputed. It is undisputed that Mr. Hankins agreed to let Mr. Cottrell, with the assistance of Mr. Arasz, begin the necessary work of removing the fallen tree from the properties, instead of hiring a professional. It is undisputed that Mr. Cottrell and Mr. Arasz cut up and removed the tree down to the root ball. It is undisputed that Mr. Cottrell and Mr. Arasz then tried, without success, to push the root ball into the hole. It is undisputed that Mr. Arasz explained to Mr. Hankins that the root ball was now in a precarious position without the counterbalancing weight previously provided by the trunk and that Mr. Hankins should try to get the root ball back into the hole. It is undisputed that Mr. Arasz advised Mr. Hankins to use a chain and a pick-up truck to get the root ball back into the

hole. Finally, it is undisputed that after the foregoing events, Mr. Hankins, nevertheless, got into the hole, under the root ball, and a tragic accident ensued.

Thus, even assuming that Mr. Kincaid owed Mr. Hankins a duty of care and gave him negligent advice, the actions and warning of the Mr. Cottrell and Mr. Arasz are a superseding cause as a matter of law. Mr. Cottrell and Mr. Arasz's actions, along with their statements to Mr. Hankins, were an efficient intervening cause. These actions were sufficiently unrelated and unanticipated by Mr. Kincaid to warrant the termination of any liability on Mr. Kincaid's part. *Cf. Griesenbeck,* 199 N.J. Super. at 139-40 (ruling that negligence claim predicated on social host liability for serving alcohol failed to establish proximate cause as a matter of law for intoxicated guest who allegedly started fire when she returned home).

First, Mr. Cottrell and Mr. Arasz's actions materially changed the condition of the fallen tree from November 2, 2012, the only time Mr. Kincaid saw it. Second, Mr. Cottrell and Mr. Arasz's removal of the trunk from the root ball led to the root ball having no counterbalance and, subsequently, falling into the hole. Third, there is no evidence that Mr. Kincaid knew that Mr. Hankins was going to employ his neighbors much less the actions that the neigbors were going to take, including removing the trunk from the root ball. There is no suggestion that Mr. Hankins' decision to rely on Mr. Cottrell and Mr. Arasz to remove the fallen tree was ever relayed to Mr. Kincaid. In fact, the evidence suggests that when he met with Mr. Kincaid on November 2nd, Mr. Hankins did not even know that he was going to employ his neighbors. Instead, it was only later when Mr. Hankins approached Mr. Cottrell, did Mr. Hankins accept Mr. Cottrell's proposal to perform the work. Fourth, and finally, Mr. Arasz (who had experience in removing similarly-sized trees), warned Mr. Hankins that the root ball was in precarious position and needed to be moved back into the hole.

Thus, no material issues of fact remain in dispute regarding proximate cause. Plaintiffs have not provided sufficient facts to show that Defendants' actions were the proximate cause of Mr. Hankins' tragic death. Consequently, Defendants cannot be found liable for negligence. The Court, therefore, finds summary judgment appropriate.

## IV. CONLCUSION

For the reasons stated above, Defendants' motions for summary judgment (D.E. 61, 63) are **GRANTED**. Therefore, both Defendants' and Plaintiffs' pending motions concerning expert testimony (D.E. 60, 62, 65, 66) are **DIMISSED** as moot. An appropriate Order accompanies this Opinion.

Dated: January 22, 2018

John Michael Vazquez, U.S.D.J.