**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-1315
_____

APRIL HANKINS,
Executrix of the Estate of Vernon Hankins, Deceased and In Her Own Right,
Appellant

v.

PHILADELPHIA CONTRIBUTIONSHIP INSURANCE COMPANY; J. CLAY
KINCAID; CRAWFORD AND COMPANY; JOHN DOE; MARY DOE; ABC
BUSINESS ENTITIES AND XYZ CORP
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-15-cv-00203)
District Judge:  Hon. John M. Vazquez
_____

Argued January 7, 2019

Before: AMBRO, SHWARTZ, and FUENTES, *Circuit Judges*.

(Filed: May 15, 2019)

Michael A. Gibson [Argued]
D'Arcy Johnson Day
3120 Fire Road
Suite 100
Egg Harbor Township, NJ 08234

     *Counsel for Appellant*

David A. Semple [Argued]
McCormick & Priore
301 Carnegie Center Boulevard
Princeton, NJ 08540

Scott J. Tredwell
McCormick & Priore
1600 John F. Kennedy Boulevard
Suite 800, 4 Penn Center
Philadelphia, PA 19103

  *Counsel for Appellee Philadelphia Contributionship Insurance Co.*

Jennifer G. Cooper [Argued]
Matthew J. Leonard
Baker Donelson Bearman & Caldwell
Monarch Plaza
3414 Peachtree Road, NE, Suite 1600
Atlanta, GA 30326

Kenneth R. Meyer
Jean P. Patterson
McCarter & English
100 Mulberry Street
Four Gateway Center, 14th Floor
Newark, NJ 07102

  *Counsel for Appellees J. Clay Kincaid and Crawford and Co.*

_____

OPINION[**]

_____

FUENTES, *Circuit Judge*.

  In November 2012, Vernon Hankins tragically died when the root ball of a tree on his property uprighted and crushed him.  The tree had fallen weeks earlier during Super Storm Sandy.  According to his wife, April Hankins, Mr. Hankins was underneath the root ball that day because the claims adjuster for the property had advised them to refill the hole

---

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

in the ground where the tree once stood.  After Mr. Hankins's death, Ms. Hankins sued the insurance company, Philadelphia Contributionship Insurance Company, its claims service provider, Crawford and Company, and the claims adjuster, J. Clay Kincaid.  The District Court granted summary judgment to the defendants, concluding that Mr. Hankins's tragic accident was unforeseeable as a matter of law.  We disagree, and will vacate and remand for further proceedings.

## I.

In 2012, April and Vernon Hankins owned two neighboring properties in Brick Township, New Jersey: 1 Nejecho Drive and 302 Mantoloking Road.  Both properties suffered damage during Super Storm Sandy in October 2012.  Importantly for this case, a tree fell between the two houses.  The root ball of the tree was approximately twelve to fifteen feet in width and left a shallow, one-and-a-half-foot hole in the ground where the tree once stood.

After the storm, Ms. Hankins contacted her insurer, Philadelphia Contributionship Insurance Company, to report claims for the properties.  Philadelphia Contributionship, in turn, had a claim service agreement with Crawford and Company, under which Crawford provided catastrophe claim services for Philadelphia Contributionship insureds.  Crawford assigned the Hankins' claims to J. Clay Kincaid, who was a catastrophe field claim representative.

The heart of Ms. Hankins's claim is that when Kincaid visited the properties on November 2, 2012, he gave the family negligent instructions about the fallen tree.  By the time Kincaid toured the property, some of the tree limbs had already been cut away, but

3

the trunk was intact.  Kincaid did not believe that the tree was dangerous in that condition because the weight of the tree trunk counterbalanced the root ball and would prevent it from falling back into the hole in the ground, a phenomenon known as "uprighting."[1] Kincaid advised the Hankinses that the hole should be backfilled with soil because it left part of the foundation of the Mantoloking property exposed.[2]  Kincaid's specific words, and the message they conveyed, are disputed by the parties.  According to Ms. Hankins, Kincaid said, "[Y]ou need to get in that hole and backfill it by hand."[3]  Ms. Hankins took from this that she and her husband were to find soil and fill the hole left by the root ball themselves.  According to Kincaid, Ms. Hankins was not present for the conversation and he never told Mr. Hankins to get underneath the root ball or to backfill the area himself.

Kincaid purportedly did not discuss tree removal with Mr. Hankins because that was not covered under the insurance policy.  Although Kincaid was familiar with the risk that an exposed root ball without sufficient counterweight could upright, he admits he did not tell Mr. Hankins not to cut back any more of the tree.  Nevertheless, he assumed that at some point the tree would be cut back.  He did not warn Mr. Hankins that it could be dangerous to stand in the hole before the tree was fully removed or that the tree might become dangerous if it were cut back further.

---

[1] A.A. 409.

[2] Kincaid later stated that the hole was not damaging the property's foundation; instead, he included it on a claims form in order to maximize the Hankins' recovery so they had enough money for a professional tree removal service.

[3] A.A. 224.

At some point after the inspection, one of the Hankins's neighbors, David Cottrell, offered to help Mr. Hankins remove the tree. Cottrell and another neighbor, Keith Arasz, worked to cut the tree trunk away from the root ball.[4] After cutting away the trunk, they attempted to push the root ball back into the hole but were unable to do so. Arasz advised Mr. Hankins to use a chain and pickup truck to pull the root ball back into the hole.

On the morning of November 22, 2012—Thanksgiving—Mr. Hankins went to do some work on the properties. He realized he forgot his keys and called Ms. Hankins to bring them to him. When she arrived, she saw Mr. Hankins standing in the hole underneath the root ball with what looked like a rake or shovel. He turned to her and appeared to be stepping out of the hole when the root ball suddenly uprighted, tragically crushing him. Shortly thereafter, he was pronounced dead.

On October 23, 2014, Ms. Hankins brought this negligence suit against Kincaid, Crawford, and PCIC, alleging that they had wrongfully caused her husband's death.[5]

---

[4] Arasz was employed by the New Jersey Turnpike Authority, and part of his job duties involved tree removal.

[5] The suit involves five causes of action: (1) wrongful death pursuant to N.J. Stat. Ann. 2A:15-3; (2) wrongful death recovery for the Estate of Vernon Hankins pursuant to N.J. Stat. Ann. 2A:31-1; (3) suffering and wrongful death on behalf of the Estate and April Hankins individually; (4) emotional trauma on behalf of April Hankins; and (5) intentional and willful misconduct. The complaint also included a request for leave to amend to add additional defendants, which was labeled as Count Two.

## II.[6]

To establish negligence, a plaintiff must show "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages."[7]  The District Court granted summary judgment to all Defendants, concluding that Ms. Hankins had not shown a genuine issue of material fact as to whether her husband's fatal injury was foreseeable to Mr. Kincaid.  He also determined that the neighbors' actions in cutting down most of the tree constituted a superseding cause as a matter of law.  As explained below, we disagree.

### A.    Proximate Cause

The Supreme Court of New Jersey has explained that proximate cause "is that combination of 'logic, common sense, justice, policy, and precedent' that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery."[8]  "So long as the injury or harm suffered was within the realm of reasonable contemplation, the injury or harm is foreseeable."[9]   Because the foreseeability determination often requires a close analysis of facts, it is generally a jury issue.[10]

This case encapsulates why thorny questions of proximate cause are best left for the

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1332(a), and we have jurisdiction under 28 U.S.C. § 1291.
[7] *Robinson v. Vivirito*, 86 A.3d 119, 124 (N.J. 2014) (citations omitted).
[8] *People Exp. Airlines, Inc. v. Consolidated Rail Corp.*, 495 A.2d 107, 116 (N.J. 1985) (quoting *Caputzal v. Lindsay Co.*, 222 A.2d 513, 517 (N.J. 1966)).
[9] *Komlodi v. Picciano*, 89 A.3d 1234, 1251 (N.J. 2014) (citation omitted).
[10] *Id.* at 1252.

jury.  First, there is conflicting record evidence about the risk the tree posed after it had fallen, but before it was cut back by Arasz and Cottrell.  Appellees' expert, Steve Chisolm, explained that uprooted trees like the one on the Hankins's property are "obviously" under stress and tension.[11]  Chisolm further testified that wood under tension may behave or react unpredictably.  He stated that he would not recommend work around or on a fallen tree given the possibility of getting hurt.  Kincaid also testified that he was aware of the possibility that a tree that is still partially attached by the root ball could spontaneously stand back up.  Arasz, who had significant professional experience with tree removal, explained that he would not have gotten into the hole underneath the fallen tree because he had seen bigger trees upright.

But Kincaid, Chisolm, and Arasz also testified that the tree was not dangerous on the day Kincaid went to the property, before it was cut back.  Chisolm had never heard of a tree that size spontaneously uprighting, and explained that a tree with such a significant amount of trunk attached was "not gonna move."[12]  Chisolm also testified that so long as the tree was being cut back properly, it would never pose a risk of uprighting.  Kincaid testified that he climbed over the tree at several points during his visit.  Thus, the record is unclear about the extent to which the tree, as it was on the day Kincaid visited, posed a risk of danger to the Hankinses.  Even if the tree were not in a dangerous condition on that day, a jury could reasonably conclude that the risk of danger as the tree was cut back further was significant enough that it was foreseeable it would cause harm to an individual

---

[11] A.A. 394.
[12] A.A. 408.

7

attempting to get underneath the root ball.

Second, there is conflicting evidence about what Kincaid told the Hankinses. Ms. Hankins recalls that Kincaid told them that they needed to get under the root ball to backfill the hole left in the ground. Kincaid recalls explaining that he would add a line item regarding the cost to backfill the hole into the insurance estimate, but did not instruct the Hankinses to do it themselves. This presents a classic factual dispute that must be resolved by a jury. If Kincaid instructed Mr. Hankins to get into the hole, a jury could reasonably conclude that the risk harm would come to Mr. Hankins was "within the realm of reasonable contemplation," given that the tree was under significant tension.[13] Additionally, although Kincaid explained that the weight of the tree trunk counterbalanced the weight of the root ball, he testified that he was aware the tree would likely be cut back further after his visit. The risk of the tree uprighting would increase as the trunk continued to be cut back. A jury could therefore conclude from this testimony that if Kincaid instructed the Hankinses to backfill the hole but did not advise them about the risk the tree could pose as it was cut back, it would be foreseeable that they would be injured while working under the tree.

In short, given the significant disputes over Kincaid's instructions and the unclear evidence on the risks of working on or around a fallen tree, we cannot say at this stage that the harm that befell Mr. Hankins was unforeseeable as a matter of law.

---

[13] *Komlodi*, 89 A.3d at 1251.

B.      **Superseding Cause**

The District Court also concluded that any chain of causation was broken because of a "superseding cause"—here, the fact that Cottrell and Arasz cut back the tree trunk but left the root ball exposed.[14]  When a plaintiff's injury is a result of a "superseding cause," it "breaks the chain of proximate causation," and liability cannot lie with the defendant.[15] But when the intervening cause was foreseeable, then that does not "break the chain of causation [or] relieve a defendant of liability."[16]

The District Court explained that Mr. Hankins agreed to let Cottrell and Arasz remove the tree, they removed the trunk but could not push down the root ball, and they then explained to Mr. Hankins that he should use a chain and a pick-up truck to get the root ball back into the hole.  After knowing all of that, "Mr. Hankins, nevertheless, got into the hole, under the root ball, and a tragic accident ensued."[17]  The District Court concluded that the series of events unfolded in a way that was "sufficiently unrelated and unanticipated by Mr. Kincaid" so as to relieve him of liability for Mr. Hankins's death.[18]

While a jury may ultimately agree with the District Court and conclude that the events that transpired after Kincaid's visit broke the chain of proximate causation, we do not think the issue is so clear-cut that it may be resolved as a matter of law.  While it is undisputed that Cottrell and Arasz cut back the trunk of the tree, Kincaid testified that he

---

[14] *Hankins v. Philadelphia Contributionship Ins. Co.*, No. 15-203, 2018 WL 515817, at *6 (D.N.J. Jan. 22, 2018).
[15] *Lamont v. New Jersey*, 637 F.3d 177, 185 (3d Cir. 2011).
[16] *Komlodi*, 89 A.3d at 1252.
[17] *Hankins,* 2018 WL 515817, at *6.
[18] *Id.*

9

expected that the tree would be further cut back after he visited the property.  Kincaid expected that the Hankinses would use a professional service to remove the tree,[19] but a jury could find the incomplete removal of the tree was foreseeable regardless of whether a professional or an experienced neighbor was the one responsible.  Finally, the record is unclear as to whether Arasz warned Hankins that the root ball was in a dangerous position after the trunk was removed.[20]  Certainly, if Arasz did warn Mr. Hankins, and Mr. Hankins decided to get beneath the root ball anyway, his actions could constitute a superseding cause of his demise.  But that question must be

decided by a jury.  As it stands, Ms. Hankins has shown significant issues of fact with respect to the question of proximate causation, and we believe the grant of summary judgment against her on these grounds was error.

## III.

Because the District Court ended its inquiry after determining that the cutting back of the tree was a superseding cause, it did not address either of the two additional arguments the parties raised before use:  whether Kincaid owed a duty to Mr. and Ms. Hankins, and whether Philadelphia Contributionship is vicariously liable for Kincaid's actions.  We believe the arguments of the parties should be addressed by the District Court in the first instance.

---

[19] Ms. Hankins contests that her husband told Kincaid they planned to hire professionals. However, she does not point to any evidence in the record to support her denial.
[20] At one point during his deposition, Arasz stated that he warned Mr. Hankins "that [the tree] could upright."  A.A. 363.  He did not recall, however, whether he warned Mr. Hankins about the danger of the tree uprighting.

For the reasons set forth above, we will vacate the order of the District Court and remand this case for further proceedings.