**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| APRIL HANKINS, individually and in her role as executrix of the estate of Vernon Hankins,<br><br>*Plaintiff,*<br><br>v.<br><br>PHILADELPHIA CONTRIBUTIONSHIP INSURANCE COMPANY, et al.,<br><br>*Defendants.* | Civil Action No. 15-203<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case stems from a tragic event that resulted in the death of Vernon Hankins ('Mr. Hankins") when he was crushed by the "root ball" of a large tree. This Court previously granted summary judgment for Defendants, finding a lack of proximate cause because the accident was not foreseeable as a matter of law. While raised by the parties, this Court did not address duty or vicarious liability in the first summary judgment opinion because the Court concluded that the proximate cause issue was dispositive.

The Court's decision as to proximate cause was reversed by the Third Circuit, which found that there were genuine issues of material fact precluding summary judgment on proximate cause. The Third Circuit did not address the duty and vicarious liability arguments because this Court had not addressed either issue in the first instance. As a result, the Third Circuit vacated the summary judgment and remanded the case for further proceedings.

Now pending before the Court are renewed motions for summary judgment by Defendant Philadelphia Contributionship Insurance Company ("PCIC"), D.E. 61, as well as Defendants Crawford & Company ("Crawford") and James Kincaid, D.E. 63. The motions address the two outstanding issues upon remand: (1) whether any Defendant owed a legal duty to Mr. Hankins and if so, whether any Defendant breached the duty; and (2) whether PCIC is vicariously liable as a result of Kincaid's alleged negligence. Plaintiff April Hankins ("Ms. Hankins"), individually and in her role as executrix of the estate of Vernon Hankins, filed a brief in opposition, D.E. 76, to which Defendants replied. D.E. 80, 82.[1] Defendants also filed motions to preclude two of Plaintiff's experts from testifying. D.E. 60, 65, 66. Plaintiff opposed the motions, D.E. 73, 74, to which Defendants filed briefs in reply. D.E. 81, 83, 84. The parties filed supplemental briefing on the motions to preclude Plaintiff's experts. D.E. 97, 98, 103-07. Finally, Plaintiff filed a motion to preclude the testimony of Defendants' expert, D.E. 62, and Defendants opposed Plaintiff's motion, D.E. 71, 72.

The Court reviewed the submissions made in support and in opposition to the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, PCIC's motion for summary judgment is **GRANTED in part** and **DENIED in part**; Crawford and Kincaid's motion for summary judgment is **DENIED**; and the motions seeking to preclude expert testimony are **DISMISSED as moot**.

---

[1] In this Opinion, Defendant PCIC's brief in support of it motion for summary judgment (D.E. 61) will be referred to as "PCIC Br."; Defendants Crawford and Kincaid's brief in support of their motion for summary judgment (D.E. 63) will be referred to as "Crawford Br."; Plaintiff's brief in opposition to the motions (D.E. 76) will be referred to as "Plf. Opp."; Defendant PCIC's reply brief (D.E. 80) will be referred to as "PCIC Rep."; and Defendants Crawford and Kincaid's reply brief (D.E. 82) will be referred to as "Crawford Rep."

2

I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

After Mr. Hankins' death, Ms. Hankins brought this wrongful-death suit against her insurance company, PCIC; its claims service provider, Crawford; and the claim adjuster, Kincaid. Briefly, Plaintiff alleges that Crawford and Kincaid failed to warn Mr. Hankins of known dangers on his properties; namely, that the root ball of a fallen tree could "upright" itself and that this failure to warn led to Mr. Hankins' death.[2] Plaintiff also contends that PCIC is independently liable, in addition to being vicariously liable for Kincaid's negligence. The Court does not repeat the case's full factual and procedural history in this Opinion. The Court instead incorporates by reference the detailed factual and procedural background from its January 22, 2018 Opinion. D.E. 85 ("January 22 Opinion").

In the January 22 Opinion and accompanying Order, the Court determined that there were superseding events which precluded a finding of proximate cause as a matter of law. Opinion at 11, 14. Specifically, when Kincaid inspected the Hankins' properties, the root ball was still attached to the fallen tree trunk. The root ball was approximately twelve to fifteen feet wide, and the hole where the root ball had been underground was approximately a foot to a foot-and-a-half deep. In addition, some of the tree branches had already been removed from the fallen tree. According to Plaintiff, Kincaid told Mr. Hankins during the inspection that Mr. Hankins needed to get into the hole to backfill the hole. Kincaid admits that he told Mr. Hankins that the hole needed to be backfilled but denies telling Mr. Hankins that Mr. Hankins needed to do the work himself or that Mr. Hankins needed to be in the hole in order to backfill the hole.

---

[2] The Hankinses owned a home at 1 Nejecho Drive (the "Nejecho Property") and Mrs. Hankins owned the adjoining property at 302 Mantaloking Road (the "Mantoloking Property"). Crawford SOMF ¶¶ 1-2. Both properties were insured by PCIC. *Id.* ¶ 4.

After Kincaid's inspection, two of the Hankinses' neighbors, Mr. Cottrell and Mr. Arasz, cut the tree trunk away from the root ball. They left the root ball resting in a vertical position after they were unable to push the root ball back into the hole. Arasz allegedly told Mr. Hankins that without the trunk, the root ball was in a precarious position and that Mr. Hankins should try and get the root ball back into the hole.

In the January 22 Opinion, this Court concluded that even assuming that Kincaid owed a duty of care, the actions of Cottrell and Arasz were a superseding cause that terminated liability as to Mr. Kincaid as a matter of law. *Id.* at 13. The Court, therefore, granted Defendants' motions for summary judgment because Plaintiff failed to establish proximate cause as a matter of law. The Court did not address the parties' arguments as to whether any party owed a legal duty or vicarious liability. *Id.* at 9.

Plaintiff appealed the January 22 Opinion and Order, and on May 15, 2019, the Third Circuit reversed and remanded to this Court for further proceedings. *Hankins v. Phila. Contributionship Ins. Co.*, 771 F. App'x 148, 153 (3d Cir. 2019). In reversing, the Circuit determined that there were genuine issues of material fact that precluded a finding, as a matter of law, as to proximate cause. *Id.* at 151-53. The Third Circuit remanded the matter to this Court for a determination, in the first instance, as to duty and vicarious liability. *Id.* at 153.

## II.  SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

4

Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## III. ANALYSIS

### A. Liability of Kincaid and Crawford

In New Jersey, a plaintiff asserting a negligence claim must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages."[3] *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 594 (2013) (citations omitted). As discussed, the Third Circuit determined that there were material issues of fact with respect to causation and there is no dispute that Plaintiff was damaged. Consequently, the outstanding issues upon remand are Defendants' duties, and whether any Defendant breached their duty.

Defendants[4] argue that under New Jersey law, an insurance adjuster owes no duty to an insured in a first-party-insured case. Crawford Br. at 15. Plaintiff frames the issue differently, countering that Kincaid owed a duty to the Hankinses because Kincaid affirmatively gave Mr. Hankins instructions about filling the hole. According to Plaintiff, because Kincaid elected to advise Mr. Hankins, Kincaid could not negligently provide instructions. Plf. Opp. at 17.

"The threshold inquiry in a negligence action is whether the defendant owed the plaintiff a duty of care." *Leonard v. Golden Touch Transp. of N.Y. Inc.*, 144 F. Supp. 3d 640, 644 (D.N.J. 2015) (quoting *Holmes v. Kimco Realty Corp.*, 598 F.3d 115, 118 (3d Cir. 2010)); *see also Fortugno Realty Co. v. Schiavone-Bonomo Corp.*, 39 N.J. 382, 393 (1963) ("To render defendants

---

[3] The parties agree that New Jersey law applies. The Court, therefore, also applies New Jersey law. *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999))).

[4] In their motion for summary judgment, Crawford and Kincaid address the issue of whether an insurance adjuster owes a legal duty to warn under the present circumstances. Crawford Br. at 15-32. PCIC, the insurance company, "adopts the legal arguments made by the Crawford Defendants on these issues, as they are equally applicable to PCIC." PCIC Br. at 6.

6

liable there must be found a breach of a duty, which duty, if observed, would have averted the plaintiff's injuries."). Under New Jersey law, "[w]hether a defendant owes a legal duty, as well as the scope of the duty owed, are questions of law for the court to decide." *D'Alessandro v. Hartzel*, 422 N.J. Super. 575, 579 (App. Div. 2011); *see also Velazquez ex rel. Velazquez v. Jiminez*, 172 N.J. 240, 263 (2002) ("The question of duty is one of law to be decided on a case-by-case basis."). To determine whether a duty exists, courts "first consider the foreseeability of harm to a potential plaintiff, and then analyze whether accepted fairness and policy considerations support the imposition of a duty." *Jerkins ex rel. Jerkins v. Anderson*, 191 N.J. 285, 294 (N.J. 2007) (internal citations omitted). Thus, in addition to foreseeability, courts consider the following factors: "the relationship of the parties; the nature of the risk; the ability to exercise care; and public policy considerations." *Desir ex rel. Estiverne v. Vertus*, 214 N.J. 303, 317 (2013).

Although the Third Circuit did not address whether Kincaid owed a duty, it did make several observations that are pertinent to the present analysis. First, the Circuit explained that "the heart" of Plaintiff's claim is that Kincaid "*gave the family negligent instructions* about the fallen tree" during his inspection. *Hankins*, 771 F. App'x at 150 (emphasis added). Next, the Circuit recognized that there is a genuine issue of material fact as to what instructions Kincaid actually gave to Mr. Hankins during the inspection. *Id.* at 152 ("[T]here is conflicting evidence about what Kincaid told the Hankinses."). Plaintiff asserts that Kincaid told Mr. Hankins that Mr. Hankins needed to get into the hole and backfill it by hand; Kincaid indicates that he never did so. The Third Circuit continued that "[i]f Kincaid instructed Mr. Hankins to get into the hole, a jury could reasonably conclude that the risk of harm would come to Mr. Hankins was 'within the realm of reasonable contemplation[.]'" *Id.* (quoting *Komlodi v. Picciano*, 217 N.J. 387, 418 (2014)). The Circuit observed that while "Kincaid explained that the weight of the tree trunk counterbalanced

7

the weight of the root ball, he testified that he was aware the tree would likely be cut back further after his visit. The risk of the tree uprighting would increase as the trunk continued to be cut back." *Id.* The Third Circuit determined that, as a result, "[a] jury could therefore conclude . . . that if Kincaid instructed the Hankinses to backfill the hole but did not advise them about the risk the tree could poses as it was cut back, it would be *foreseeable* that they would be injured while working under the tree." *Id.* (emphasis added). The Third Circuit's observations inform the Court in two respects. First, the Circuit appeared to view the duty issue as one based on affirmative advice from Kincaid. Second, the Circuit appeared to indicate that foreseeability of harm was sufficiently established (provided that a jury believed that Kincaid instructed Mr. Hankins to get into the hole to backfill it).

Next, this Court concludes that fairness dictates that if Kincaid in fact gave the Hankinses instructions as to how to backfill the hole, he had a duty to not give negligent instructions. Kincaid, a professional insurance adjuster, was present at the Hankins' properties to help the Hankinses after they had suffered losses from Superstorm Sandy. Kincaid, therefore, was in a position of trust with the Hankinses. Thus, the parties' relationship weighs towards finding a limited duty here. The nature of the attendant risk, and the opportunity and ability to exercise care also weigh in favor of finding a duty. Given the fact that Mr. Hankins died, the nature of the risk was extremely serious and Kincaid's ability to give proper instructions was minimal in comparison. Finally, public policy weighs in favor of imposing a limited duty of care once Kincaid affirmatively chose to tell the Hankinses how to fill the hole. Specifically, there is a public interest in protecting homeowners who are dealing with property damage from further risk of personal injury or more extensive property damage.

8

Defendants rely heavily on *Calhoun v. Providence Mutual First Insurance Company*, 204 F. Supp. 3d 436 (D. Conn. 2016) to establish that no duty exists here. *Calhoun*, however, is distinguishable. In *Calhoun*, the court applied a similar, fact-sensitive multi-factor test to determine that the insurance company did not owe a duty to inform an insured about the presence of mold in the insured's home. *Id.* at 443-46. In that case, the adjuster was retained to complete a review of the insured's boiler. "He was not retained to examine mold or the attendant risks that might arise from the presence of mold." *Id.* at 444. Among other things, the *Calhoun* court was concerned that imposing a duty would impact the relationship between insurers and their agents "by increasing potential liability for insurers, whenever insurance-related investigations disclose problems *outside the scope of the underlying claim*." *Id.* at 445 (emphasis added). Moreover, there is no indication that the adjuster in *Calhoun* proactively gave advice to the insureds about the mold. Instead, the adjuster noted the presence of "what appeared to be mold on the wall and ceiling near the boiler" in his report to the insurance company but did not inform the insureds. *Id.* at 439.

Here, the fallen tree was explicitly listed on the Hankins' Property Loss Notice. *See* Property Loss Notice, Certification of Michael A. Gibson ("Gibson Cert."), Ex. C. Unlike *Calhoun*, Kincaid went to the Hankins' properties, in part, to determine the scope of the Hankins' coverage with respect to the fallen tree. Although the parties disagree as to the scope of coverage for the tree removal, at a minimum, the parties appear to agree that the cost to remove the part of the tree that was covering the damaged fence was covered by the policies. Crawford SOMF ¶ 18; *see also* Property Estimate and Appraisal Report for Nejecho Property, Gibson Cert., Ex. I (including the cost of professional tree removal in estimate). There is also a genuine issue of material fact as to whether the dislodged root ball damaged the foundation of the Hankins' home,

and whether this damage was covered under the policy. Crawford SOMF ¶ 21. The reasoning employed by the court in *Calhoun*, therefore, is inapplicable because the removal of at least part of the tree was within the scope of coverage, and the tree itself was relevant to Kincaid's inspection. More importantly, there is a material issue of fact about whether Kincaid affirmatively told Mr. Hankins to backfill the hole by hand. As discussed, the issue in *Calhoun* was that the adjuster *failed* to address the mold with the insureds. Thus, the court in *Calhoun* was dealing with a different issue.

Plaintiffs rely on *Bruno v. Erie Insurance Company*, 630 Pa. 79 (2014). In *Bruno*, an insurance adjuster inspected the plaintiff's home on two separate occasions after the plaintiff discovered mold during a home renovation project. During both inspections, the inspector failed to warn the plaintiff of the dangers of the mold or instruct the plaintiff that the mold should be remediated. Instead, the adjuster "affirmatively recommend[ed] to the Brunos that they continue their renovation efforts." *Id.* at 116. After the plaintiff's family began to suffer from various respiratory ailments, the plaintiff had the mold tested at the family's expense and the test results revealed that the mold was toxic and hazardous to human health. *Id.* at 84-86.

The plaintiff brought suit asserting, among other things, a tort claim against the insurance adjuster and Erie, the insurance company, for negligence. *Id.* at 86. The court in *Bruno* determined that the plaintiff's claim was "predicated on the allegedly negligent actions taken by Erie's agents on behalf of Erie *while* they were performing Erie's contractual obligations to investigate the claim made by the Bruno's under their policy in order to determine if the mold discovery triggered any of Erie's aforementioned payment obligations." *Id.* at 115 (emphasis in original). The *Bruno* court did not, however, impose a duty based on a general duty for adjusters to warn of known dangers. Rather, the court concluded that Erie's agents "acted in a negligent manner *by making false*

10

*assurances* regarding the toxicity of the mold *and affirmatively recommending* to the Brunos that they continue their renovation efforts." *Id.* at 116 (emphases added). Thus, like here, because the defendants affirmatively gave advice, they had a duty to not give advice in a negligent manner. *Id.* at 116-17; *see also Selmek v. State Farm Fire & Cas. Co.*, No. 14-388, 2014 WL 6612906, at *6-7 (W.D. Pa. Nov. 20, 2014) (rejecting argument that insurance company owed no duty to insured at motion to dismiss stage where claims adjuster allegedly instructed plaintiff to go onto roof and put a tarpaulin over damaged areas of the roof to prevent further damage).

Accordingly, the Court finds that once Kincaid gave affirmative advice to Mr. Hankins, Kincaid had a duty not to give advice in a negligent manner. Of course, whether Kincaid actually gave the instruction(s) alleged by Plaintiff is for a jury determine. Defendants' motions for summary judgment are denied on these grounds.

### B. Liability of Philadelphia Contributionship Insurance Company

PCIC maintains that it cannot be vicariously liable for Kincaid's negligent conduct because Kincaid was not an agent, servant, or employee of PCIC. PCIC Br. at 1-5. PCIC continues that Kincaid was an employee of Crawford, PCIC's independent contractor. PCIC SOMF ¶ 9. Plaintiff counters that because Kincaid was acting with the apparent authority, PCIC can be vicariously liable. Plf. Opp. at 40-44. The Court agrees with Plaintiff, and whether Kincaid was acting with apparent authority is for a jury determine.

PCIC had a "Claim Service Agreement" with Crawford "whereby Crawford provided claim administrative services, including catastrophe claims services" between May 1, 2012 and April 30, 2014. *Id.* ¶ 5; PCIC SOMF ¶ 3. Kincaid was a Catastrophe Field Claim Representative for Crawford. Crawford SOMF ¶ 6. Kincaid explained that he is an independent adjuster, but

11

when he is working for Crawford, he is a Crawford employee. PCIC SOMF ¶ 9. Crawford assigned Kincaid to the Hankins' claim. *Id.* ¶ 12.

"[T]he doctrine of *respondeat superior* recognizes a vicarious liability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees." *Carter v. Reynolds*, 175 N.J. 402, 408 (2003). Moreover, "[i]f a principal cloaks an independent contractor with apparent authority or agency, the principal can be held liable as if the contractor were its own employee if it held out the contractor to the plaintiff as its own servant or agent." *Basil v. Wolf*, 193 N.J. 38, 63 (2007). To impose vicarious liability through apparent authority, the critical inquiry "is whether the principal has by his voluntary act placed the agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in presuming that such agent has authority to perform the particular act in question." *Id.* (quoting *Arthur v. St. Peters Hosp.*, 169 N.J. Super. 575, 580 (Sup. Ct. 1979)).

In this instance, there are genuine disputes of material fact precluding summary judgment. In other words, a reasonable jury could conclude that Kincaid was acting with the apparent authority of PCIC. PCIC insured the Hankinses' properties. Crawford SOMF ¶ 4. "Regarding Hurricane Sandy claims, an insured would call PCIC to report a loss, and the call would be transferred to Crawford." PCIC SOMF ¶ 13. Jack Smyrl, PCIC's Rule 30(b)(6) corporate representative, testified, however, that he was not sure that insureds knew that they were being transferred to a separate company. Smyrl Dep., Gibson Cert. Ex. BB, at T44:19-56:6. And although Smyrl explained that an insured should have received a letter within ten days of receipt

of loss explaining that Crawford was handling Sandy related insurance claims for PCIC,[5] *id.* at T45:8-17, Kincaid's inspection occurred just four days after Superstorm Sandy. Crawford SOMF ¶ 3,7. Accordingly, when Kincaid performed his inspection, PCIC had not yet informed the Hankinses that Crawford was actually handling their claim. PCIC argues that Kincaid informed the Hankinses, in a phone call, that he was with Crawford, but PCIC does not indicate whether Kincaid further identified Crawford as an independent contractor as to PCIC. Plaintiff states that Kincaid indicated that he "was representing" PCIC. Hankins Dep., Gibson Cert., Ex. K, at T36:18-23. Finally, nothing in the policies themselves indicate that PCIC could hire an independent contractor to adjust a claim. Gibson Cert., Exs. A, B. Based on these facts, a reasonable person could assume that Kincaid had authority to act of PCIC's behalf. Because there is a genuine issue of material fact as to whether Kincaid was acting with apparent authority, the Court cannot conclude as a matter of law that PCIC is not vicariously liable for Kincaid's negligence. PCIC's motion for summary judgment is denied on these grounds.

PCIC also contends that it is not independently liable for Plaintiff's damages. PCIC Br. at 6-7. The Court agrees. Plaintiff only argues that Kincaid owed a legal duty to the Hankinses and fails to address the basis for PCIC's duty. Consequently, PCIC's motion for summary judgment is granted to the extent that it argues that it cannot be independently liable for negligence. Instead, PCIC's potential liability is limited to whether it is vicariously liable for the allegedly negligent instructions of Kincaid.

---

[5] The record fails to indicate whether the letter stated that Crawford was an independent contractor as to PCIC or whether the Hankinses even received the letter.

13

## IV. MOTIONS TO BAR TESTIMONY

In three separate motions, the parties seek to bar testimony from expert witnesses. D.E. 60, 62, 65, 66. Because the Court did not rely on any expert reports to decide the motions for summary judgment, the motions to bar testimony are dismissed as moot. The parties may refile their motions to bar testimony as motions in limine before trial.

## V. CONCLUSION

For the reasons stated above, Defendant Philadelphia Contributionship Insurance Company's motion for summary judgment (D.E. 61) is **GRANTED in part** and **DENIED in part**; the motion for summary judgment filed by Defendants Crawford & Company and James Kincaid (D.E. 63) is **DENIED**; and the motions concerning expert testimony (D.E. 60, 62, 65, 66) are **DISMISSED** as moot. An appropriate Order accompanies this Opinion.

Dated: February 25, 2020

John Michael Vazquez, U.S.D.J.